UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CARMEN D. MELENDEZ,

                Plaintiff,

    -v-                                                                             1:13-CV-1068

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                            OF COUNSEL:

LEGAL AID SOCIETY OF NORTHEAST      MICHAEL J. TELFER, ESQ.
   NEW YORK - ALBANY                     SHUBH NIGAM MCTAGUE, ESQ.
Attorneys for Plaintiff
55 Colvin Avenue
Albany, NY 12206

OFFICE OF REGIONAL GENERAL COUNSEL   FERGUS J. KAISER, ESQ.
   SOCIAL SECURITY ADMINISTRATION
   REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

     Plaintiff Carmen Melendez ("Melendez" or "plaintiff") brings this action, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying her application for

Supplemental Security Income ("SSI").  The parties have filed their briefs as well as the

Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[1]

## II. **BACKGROUND**

On September 11, 2010, Melendez filed an application for SSI claiming a period of disability beginning on January 1, 2000. R. at 115-18.[2] This application was initially denied on November 17, 2010. Id. at 72-75. At plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Michelle Marcus on January 4, 2012. Id. at 27-63. Plaintiff, represented by an attorney, appeared and testified.[3] Id.

On July 18, 2012, the ALJ rendered a written decision concluding that Melendez was not disabled within the meaning of the Social Security Act (the "Act") from September 11, 2010 through the date of this decision. R. at 11-21. Plaintiff timely appealed this unfavorable disability determination to the Appeals Council. Id. at 7.

On August 1, 2013, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Melendez's request for review. R. at 1-3. Plaintiff filed this action on August 29, 2013, seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

[2] Citations to "R." refer to the Administrative Record.

[3] At the hearing, Melendez also amended the alleged onset date of her disability to September 11, 2010. R. at 30.

## III. **DISCUSSION**

### A. **Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986

(2d Cir. 1987)).

## B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical

evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

The ALJ found Melendez had not engaged in substantial gainful activity since

- 5 -

September 11, 2010, the amended onset date. R. at 13. The ALJ next found plaintiff's degenerative disc disease of the lumbar spine, obesity, and asthma to be severe impairments. Id. However, the ALJ concluded that plaintiff's sleep apnea, bilateral carpal tunnel syndrome, and mood disorder were not severe impairments. Id. at 13-14. Next, the ALJ concluded that plaintiff's combination of severe impairments did not meet or equal any of the Listings. Id. at 16. The ALJ then determined plaintiff retained the RFC to perform sedentary work with the additional limitation that she should avoid concentrated exposure to respiratory irritants. Id.

Based on these findings and Melendez's age, education, and work experience, the ALJ determined jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 19. Accordingly, the ALJ concluded plaintiff was not disabled within the meaning of the Act. Id.

### D. Plaintiff's Appeal

On appeal, Melendez argues the ALJ: (1) improperly concluded that her sleep apnea and bilateral carpal tunnel syndrome were not "severe" impairments; (2) failed to properly specify the Listings she considered at step three; (3) improperly weighed the medical evidence; (4) incorrectly evaluated plaintiff's credibility; (5) failed to provide a function-by-function analysis of her RFC; and (6) failed to elicit the testimony of a vocational expert.

#### 1. Severity Determination

At step two, the ALJ must determine whether a claimant has one or more severe impairments that significantly limit her physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). Melendez argues the ALJ should have

found her sleep apnea and bilateral carpal tunnel syndrome to be "severe" impairments within the meaning of this definition. Pl.'s Mem., ECF No. 12, 21.[4]

With respect to her sleep apnea, Melendez first points out that she was diagnosed with "obstructive sleep apnea" following a July 2010 sleep study. R. at 219. In fact, the report from this study even characterizes plaintiff's sleep apnea as "severe." Id.

But this diagnosis, standing alone, does not establish severity within the meaning of the Regulations, since the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is insufficient to render a condition "severe" as it is defined in the Act. Zenzel v. Astrue, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.) (citation omitted) (adopting Report & Recommendation of Bianchini, M.J.).

Rather, the claimant bears the burden of showing that the diagnosed impairment "significantly limits" her physical or mental ability to do basic work activities. Zenzel, 993 F. Supp. 2d at 152. Examples of these basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . seeing, hearing, and speaking . . . [u]nderstanding, carrying out, and remembering simple instructions . . . [u]se of judgment . . . [r]esponding appropriately to supervision, co-workers and usual work situations." Id. (citations omitted).

In this regard, Melendez notes that the results from her sleep study also "suggested" that she "consider restriction of driving, or other activities requiring sustained vigilance." R. at 219. More importantly, however, plaintiff emphasizes that she testified during the hearing

---

[4] Pagination corresponds with that assigned by CM/ECF.

that her sleep apnea can cause her to "fall asleep just talking." Pl.'s Mem. at 23 (citing R. at 59-60). At the hearing, plaintiff explained that previous co-workers had been forced to alter their schedules to accommodate her daytime bouts of drowsiness and noted that she may even have been in danger of termination as a result of her inability to consistently stay awake at this previous job. R. at 56-57. Despite this testimony, the ALJ's written decision concluded that because plaintiff "did not indicate that her sleeping difficulties cause her any problems with work-related activities," her sleep apnea was "not a severe impairment." Id. at 13.

It is unclear how the ALJ properly reached this conclusion. As an initial matter, the Regulations explicitly recognize that "daytime sleepiness that results from sleep apnea can affect memory, orientation, and personality, and preclude a patient from engaging in gainful work." Solsbee v. Astrue, 737 F. Supp. 2d 102, 111 (W.D.N.Y. 2010) (citing the Listings). In other words, the Regulations contemplate that certain cases of sleep apnea can be so severe as to be presumptively disabling at step three. And Melendez's testimony, if credited, would tend to establish this sort of disabling symptomatology to at least some minimal degree.

Importantly, the question of whether an impairment is severe—whether it "significantly limits" a claimant's ability to perform basic work activities—is an entirely different question than whether a claimant is suffering from a qualifying "disability" within the meaning of the Act. Snedeker v. Colvin, 2015 WL 1126598, at *4 (N.D.N.Y. Mar. 12, 2015) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.); see also Royal v. Astrue, 2012 WL 5449610, at *5 (N.D.N.Y. Oct. 2, 2012) (Suddaby, J.) (adopting Report & Recommendation of Hines, M.J.) (noting the phrase "significantly limits" might be erroneously interpreted as

"setting the bar so high as to be tantamount to an ultimate determination of disability"). Indeed, courts have repeatedly emphasized that this severity finding, made at step two, is only intended to "screen out *de minimis* claims." Snedeker, 2015 WL 1126598, at *4 (quoting Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995)).

In light of this low hurdle, it is difficult to see how the ALJ could have concluded that Melendez's sleep apnea was so *de minimis* as to be non-severe, since her hearing testimony, if credited, would seem to substantiate something more than "minimal limitations" on her ability to carry out work-related activities during the day.

The Commissioner defends the ALJ's conclusion by noting that there is "no *medical* evidence during the relevant period" to indicate that Melendez's sleep apnea would affect her ability to carry out these work-related activities. Def.'s Mem., ECF No. 16, 7 (emphasis added). And this is correct, since even the sleep study that diagnoses plaintiff with sleep apnea occurred in July 2010, two months before the amended onset date of September 2010.[5] But "[w]hile *existence* of an impairment cannot be based wholly on subjective statements, no legal bar prevents reliance on such evidence to find that an impairment has more than minimal effect on an individual's ability to work." Snedeker, 2015 WL 1126598, at *4 (emphasis in original).

In other words, the ALJ's statement might make more sense if she had also chosen to entirely discount Melendez's hearing testimony. However, the ALJ apparently did not do so here—a review of the ALJ's credibility determination reveals that she specifically noted that plaintiff testified that she "falls asleep during the day and takes a nap every day." R. at 16.

---

[5] The ALJ's discussion of Melendez's sleep apnea indicates that, at the very least, the ALJ considered the *diagnosis* to be valid and continuing through the relevant period.

Rather than completely discount these allegations of apparently uncontrolled daytime sleepiness ostensibly stemming from Melendez's sleep apnea, the ALJ concluded, in relevant part, that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"; that is, plaintiff's sleep apnea could reasonably be expected to cause her to fall asleep during the day. See id. Although the ALJ went on to then discount plaintiff's statements "concerning the intensity, persistence and limiting effects" of this and other impairments, the written decision indicates that the ALJ at least partially credited plaintiff's allegations of bouts of sleepiness.

Viewed in this way, it is hard to imagine how the ALJ nevertheless concluded Melendez's sleep apnea failed to cross even the *de minimis* threshold imposed at step two. To the contrary, the medical diagnosis, combined with a partial acceptance of plaintiff's testimony, is more than a sufficient basis on which to conclude that plaintiff's sleep apnea was "severe" at step two. See Snedeker, 2015 WL 1126598, at *5 (concluding the "*de minimis* threshold was crossed" where ALJ made similar partially favorable credibility determination). The ALJ's non-severity finding, which appears grounded in a characterization of plaintiff's hearing testimony that is not easily reconciled with the later credibility determination, was in error.

Even so, the Commissioner contends any error that may have been committed at this step is harmless because the ALJ continued with the sequential analysis. But the harmless error doctrine requires more than just adherence to the five-step sequence. Rather, the omission of one or more severe impairments at step two may only be deemed harmless where the ALJ also later considers the effects from the omitted impairment as part of the ultimate RFC determination. Stanton v. Astrue, 370 Fed. App'x 231, 233 n.1 (2d Cir. 2010)

(summary order) (noting an ALJ must consider the combined effect of "all symptoms" in making an RFC determination).

It is unclear whether the ALJ properly undertook that later analysis here, since a review of the written decision denying benefits indicates that the ALJ omitted any further discussion regarding Melendez's sleep apnea or any analysis of how falling asleep every day, which the ALJ appears to have at least partially credited, might contribute to the "combined effect of all of [plaintiff's] impairments" as required by the Regulations. Because these ambiguities leave doubt about whether the appropriate legal standard was applied, remand for further consideration is necessary. See Hamilton v. Colvin, 8 F. Supp. 3d 232, 242 (N.D.N.Y. 2013) (Scullin, S.J.) (adopting Report & Recommendation of Bianchini, M.J.) (noting similar concerns where "it appears the ALJ dismissed the diagnosis after concluding the impairment was non-severe").

### 2. **Other Considerations**

Melendez's remaining challenges are predicated on conclusions drawn by the ALJ that will necessarily be impacted by a fresh consideration of plaintiff's claim beginning at step two. However, the ALJ is also specifically directed to revisit or clarify at least two other aspects of her written decision on remand.

First, the ALJ should clarify the basis for her findings with respect to the August 2010 evaluation completed by James Sayegh, M.D., the physician with whom Melendez has

treated for approximately ten years.[6]  See Pl.'s Mem. at 13.  Dr. Sayegh's evaluation noted a number of limitations in plaintiff's ability to grasp, turn, twist, and manipulate objects with her hands—findings that tended to support plaintiff's testimonial allegations of limitations stemming from her diagnosis of bilateral carpal tunnel syndrome.  R. at 13, 414-17.

The ALJ rejected this evaluation at step two, concluding it was entitled to "no weight" because the ALJ's review of Dr. Sayegh's medical records "suggest[ed] that the limitations placed by Dr. Sayegh were not based on anything besides the claimant's own reports."  R. at 14.  By completely discrediting Dr. Sayegh's evaluation, the ALJ was able to conclude that plaintiff's bilateral carpal tunnel syndrome was "not a severe impairment."  Id.

As a general matter, "a patient's complaints or reports of his or her history are 'an essential diagnostic tool'" regularly employed by physicians.  McGregor v. Astrue, 993 F. Supp. 2d 130, 139 (N.D.N.Y. 2012) (McAvoy, J.) (adopting Report & Recommendation of Bianchini, M.J.).  Presumably, the ALJ's statement about Dr. Sayegh's medical opinion—that it was "not based on anything besides the claimant's own reports"—was a permissible reference to some inconsistency between Dr. Sayegh's conclusions and other substantial evidence in the record, as the ALJ suggested elsewhere in the written decision.

Read otherwise, this conclusion might be viewed as an impermissible attempt by the ALJ to second-guess Dr. Sayegh's medical expertise.  See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony

---

[6] The opinion of a treating physician, such as Dr. Sayegh's, regarding the nature and severity of impairments is generally entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."  Cobbins v. Comm'r of Soc. Sec., 32 F. Supp. 3d 126, 134 (N.D.N.Y. 2012) (Scullin, S.J.) (citations omitted) (adopting Report & Recommendation of Bianchini, M.J.).

- 12 -

or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.").[7]

In other words, because the ALJ's statements could be fairly read as indicative of impermissibly discrediting Dr. Sayegh's *medical opinion* regarding Melendez's limitations—grounded in, inter alia, his medical training and ten years of experience as plaintiff's treating physician—on the basis of only the ALJ's *lay judgment* that Dr. Sayegh should not have considered some, or all, of plaintiff's complaints to be accurate or credible as part of his medical evaluation, this finding should be clarified.

Second, and on the subject of credibility, the ALJ is also directed to clarify her evaluation of Melendez's subjective complaints. "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Colvin, –F. Supp. 3d–, 2015 WL 4993681, at *6 (N.D.N.Y. Aug. 21, 2015) (quoting Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999)).

Where the record evidence does not support a claimant's testimony, the ALJ must employ a two-step analysis to evaluate the claimant's reported symptoms. See 20 C.F.R. § 404.1529; SSR 96-7p. First, the ALJ must determine whether, based on the objective medical evidence, a claimant's medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(a); SSR 96-7p.

---

[7] It bears noting that "[t]he ALJ has an 'affirmative duty to develop the record and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel' to determine upon what information the treating source was basing his opinions." Hamilton, 8 F. Supp. 3d at 241 (quoting Colegrove v. Comm'r of Soc. Sec., 399 F. Supp. 2d 185, 196 (W.D.N.Y. 2005)).

Second, if the medical evidence establishes the existence of such impairments, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to do work. See id.

At this second step, the ALJ must consider: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve his pain or other symptoms; (5) other treatment the claimant receives or has received to relieve his pain or other symptoms; (6) any measures that the claimant takes or has taken to relieve his pain or other symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to his pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(I)-(vii); SSR 96-7p.

Importantly, an ALJ "must discuss the relationship between the plaintiff's medically determinable impairment, the plaintiff's reported symptoms, his conclusions regarding the plaintiff's functioning, and why the plaintiff's reported symptoms are or are not consistent with the evidence in the record." Deeley v. Astrue, 2011 WL 454505, at *5 (N.D.N.Y. Feb. 3, 2011) (Scullin, S.J.) (citing SSR 95-5p).

Here, the bulk of the ALJ's discussion of Melendez's credibility in her written decision stated that:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. at 17.

As an initial matter, courts in this district have repeatedly condemned this boilerplate language as "gobbledygook" that "smacks of determining residual functional capacity before even considering a claimant's subjective testimony" and "is, at best, gibberish insusceptible to meaningful judicial review." Crofoot v. Comm'r of Soc. Sec., 2013 WL 5493550, at *11 (N.D.N.Y. Sept. 30, 2013) (Sharpe, C.J.) (adopting Report & Recommendation of Hines, M.J.).

However, "reviewing courts do not demand perfect decisions, and [w]hile this sort of boilerplate is inadequate, by itself, to support a credibility finding, . . . its use[ ] does not make a credibility determination invalid." Lewis, 2015 WL 4993681, at *7 (quoting Crofoot, 2013 WL 5493550, at *11). Rather, "[t]he determinative question is not whether [the] ALJ [ ] used meaningless and opaque language when expressing his credibility choice, but whether he explained how [the claimant's] subjective testimony is not supported or undermined by other evidence, and whether the ultimate credibility finding is supported by substantial evidence." Id. (citation and internal quotation marks omitted).

In this case, the ALJ's written decision indicates some adherence to the seven-factor test expounded in the Regulations beyond a simple recitation of the boilerplate language. For example, the ALJ noted that Melendez was able to participate in a broader range of daily activities than her allegations of disabling limitations would seem to permit. See R. at 18.

At the same time, however, other aspects of this credibility determination are troublesome. For instance, although the ALJ correctly noted that Melendez was not currently taking prescription medication, the conclusion drawn from this fact—that "[t]his suggests that [plaintiff's] pain is not as disabling as she testified"—is not clearly supported by the

record. R. at 18.

To be sure, Melendez did indeed testify that "I don't even have medication for the pain right now." R. at 44. But plaintiff made this statement in the context of noting that "it's scary just having to wait for your insurance to kick in to be able to go and see these people. So I haven't [seen] anybody about anything." Id. In other words, plaintiff's testimony regarding her lack of medication seems to have been based on a lack of access to medication stemming from a lapse in her medical coverage, not necessarily a lack of need. See, e.g., Lovelace v. Bowen, 813 F.2d 55, 59 (5th Cir. 1987) ("To a poor person, a medicine that he cannot afford to buy does not exist.").

Here, the ALJ even explicitly noted that, "[a]lthough the claimant does not have health insurance, the undersigned *believes* that if the claimant's symptoms were so disabling, there would be some evidence of treatment." R. at 18 (emphasis added). In addition to again seeming to cross the line into the impermissible territory of medical judgment, the Regulations also suggest this is an improper basis for discounting Melendez's credibility.

Although "[a]n ALJ is permitted to consider a [p]laintiff's failure to seek treatment for alleged disabilities when evaluating a [p]laintiff's credibility with respect to statements of the extent of the impairments," Miller v. Colvin, –F. Supp. 3d–, 2015 WL 628359, at *12 (W.D.N.Y. Feb. 12, 2015) (citations and explanatory parentheticals omitted), "a claimant should not be penalized for failing to seek medical treatment that she could not afford because she did not have insurance coverage." Pierce v. Astrue, 946 F. Supp. 2d 296, 308 (W.D.N.Y. 2013).

In fact, the Regulations direct that ALJs "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular

medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7p.

Further, this Regulation specifically indicates that an "acceptable explanation" for such an inconsistency in treatment would be that "[t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services." See Roman v. Colvin, 2015 WL 4643136, at *16 n.8 (S.D.N.Y. Aug. 4, 2015) (concluding ALJ "improperly penalized plaintiff" where plaintiff's testimonial allegation provided "an alternative explanation" for his non-compliance with a medication regimen).

In this case, it is unclear whether the ALJ could have properly made an adverse inference regarding Melendez's lack of medical treatment while at the same time crediting plaintiff's allegation that she lacked access to affordable medical treatment during the relevant period. Cf. Bishop v. Colvin, 2015 WL 792050, at *10 (N.D.N.Y. Feb. 25, 2015) (Suddaby, J.) (concluding ALJ's adverse inference was permissible where claimant made "no allegation that a lack of insurance played any role" in her failure to continue certain treatments). Accordingly, this finding should also be clarified on remand.

## IV. **CONCLUSION**

The deficiencies in the ALJ's written decision leave a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards.

Therefore, it is

ORDERED that

1. Melendez's motion for judgment on the pleadings is GRANTED in part;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's decision is VACATED; and

4. This matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.

The Clerk of the Court is directed to close the case.

IT IS SO ORDERED.

United States District Judge

Dated: September 16, 2015
      Utica, New York.